United States Bankruptcy Court
Northern District of California

In re:

Case No. 18-31069

Chapter 11

REJUVI LABORATORY, INC
_____

**[PROPOSED] COMBINED PLAN OF REORGANIZATION AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT**
**(July 17, 2019)**

**INTRODUCTION**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [_____]. The court will hold a hearing on confirmation of the Plan on [_____] at [_____].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 includes copies of Debtor's recent Monthly Operating Reports. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly

-1-

encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts upon confirmation of the Plan. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|---|---|---|---|---|---|---|
| 1 | Borelli Inv Co.[1] | 360 Swift, Units 37 and 38, South San Francisco, CA 94080 | $1,713 | $3,426 | none | To be paid in lump sum without interest 90 days from Effective Date |
|  |  |  |  |  |  |  |

Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys' fees and late charges) by paying a lump sum 90 days from the Effective Date on the above secured claims. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the amount of the payment. Creditors

---

[1] Creditor filed the claim as unsecured, but Debtor believes that pursuant to the CC&R the HOA dues are secured.
Combined Plan & Disclosure Statement

in these classes shall retain their interest in the collateral until paid in full.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). Small Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|
| **Not applicable** | | |

**Class 2(b). Claim of creditors Warwick and Olson**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Ashley Warwick and Summer Olson | Unknown | Y | See discussion below | None |
| | | | | |

This class consists of the personal injury claims asserted by Ashley Warwick and Summer Olson in case no. 18-02701 pending in the U.S. District Court for the Northern District of California. Upon the Effective Date, Warwick and Olson may proceed with the litigation provided that their recovery will be limited to any insurance policy proceeds. **This class is impaired and is entitled to vote on confirmation of the Plan.**

**Class 2(c). Claim of Maria Corso**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Maria Corso | $1,242,240 | Y | See discussion below | None |
| | | | | |

This class consists of the personal injury claim of Maria Corso. The claim is pending in courts in Australia and in the U.S.

District Court for the Northern District of California. Debtor disputes the claim. Debtor has sold its tattoo removal product for many years and has experienced very few claims based upon its use. The product is sold only to distributors and comes with a thorough set of directions for use (a copy is attached hereto). Corso is an Australian citizen and went into a salon in Adelaide, Australia for tattoo removal. She asserts she was injured by the application of the product. She did not pursue the person who applied the product or the distributor of the product in Australia. Instead, she pursued Debtor as the "deep pocket." She received a default judgment against Debtor of $1.2 million Australian dollars and has added attorneys' fees, including fees incurred in this case to her claim.

Debtor asserts: i) the default was improper; ii) If Corso suffered any damages, the amount of the judgment entered with no defense vastly overstated the damages and should be set aside; iii) the Australian court did not have jurisdiction over Rejuvi; iv) Rejuvi can challenge the liability and extent of any damages in the district court case pending in the United States, or in this Court given Corso's filing of a claim in this case.

Once the amount of Corso's claim is determined by a court of competence jurisdiction and that determination is final for all purposes, Rejuvi will pay the claim in full pursuant to the following schedule: $200,000 within 30 days of the claim being allowed and any such ruling becoming final; $100,000 per year to be paid quarterly beginning three months from the $200,000 payment until the claim is paid in full. Once it becomes final, Corso's claim will accrue interest at the United States Federal Judgment rate in effect as of the Effective Date pursuant to 28 U.S.C Section 1961. Rejuvi's obligation to pay the Corso claim pursuant to the Plan will be secured by a deed of trust on the Debtor's real property located at 360 Swift, Units 37 and 38, South San Francisco, CA 94108. The deed of will contain customary terms and protections, except that it will be subject to being subordinated to a new deed of trust not to exceed $500,000 in the event Debtor needs to borrow money for operations or Plan payments.

**Class 2(d). General Unsecured Claims – other than those described above**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

| | | | | |
|---|---|---|---|---|
| HWL Ebsworth | $23,517 | N | See dis**cussion below** | None |
| Lipotec USA, Inc. | $14,141.92 | N | " | " |
| Landsberg Orora | $820.05 | N | " | " |
| Breall & Breall | $18,000 | N | " | " |
| David Rosprim | $10,000 | N | " | " |
| Dermascope Magazine | $4,800 | N | " | " |
| JSI | $245 | N | " | " |
| Les Nouvelle Esthetiques | $4,500 | N | " | " |
| Lubrizol | $2,329 | N | " | " |
| Omya Specialty Materials | $1,379 | N | " | " |
| Pain Magazine | $1,350 | N | " | " |
| Mirage Marketing | $10,000 | N | " | " |
| Uline Shipping | $826 | N | " | " |
| Vintage Specialty Ingredients | $1,494 | N | " | " |
| Wade Cheng | $80,000 | N | " | " |
| | | | | |

Allowed claims of general unsecured creditors other than those set forth in the preceding classes are included in this class. These creditors, other than Wei "Wade" Cheng, shall receive payment of their claims in full 90 days from the Effective Date without any interest accruing on the claim, unless such claim is in dispute, in which case the claim will be paid once it is allowed and the determination of such allowance is final. With respect to Mr. Cheng's claim, it will not be paid until one year from the Effective Date or such later date as Debtor determines in its business judgment is appropriate. The amounts shown are based either upon the Debtor's schedules or the amount listed in the creditor's filed claim.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**Class 3. Equity Interests**

-5-
Combined Plan & Disclosure Statement
Case: 18-31069   Doc# 122   Filed: 07/17/19   Entered: 07/17/19 15:34:22   Page 5 of 17

This class consists of all equity interest in the Debtor whether the interest holder has preferred or common stock. Debtor believes all stock held is common stock.

The holders of equity interest in the Debtor will not receive any distributions under the Plan on account of their interests. Their stock, however, will not be cancelled and holders will retain their interest and will otherwise retain the legal, equitable and contractual rights provided by their interests.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)  Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Finestone Hayes LLP | $75,000 |
|  |  |

The following professionals have agreed to accept payment over time as follows. Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year] or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| **N/A** |  |  |  |
|  |  |  |  |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-

-6-

confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| U.S. Trustee | $3,000 |
| | |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full on the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| IRS | $1,492 | 5% | | 1 |
| | | | | |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation there were no arrears.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|

| Daimler Trust | Auto lease | $0 | N/A | N/A |
| | | | | |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| **N/A** | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed [select one] [assumed/rejected]. **N/A**


**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)  <u>Discharge</u>.  Debtor shall receive a discharge upon the confirmation of the Plan pursuant to 11 U.S.C. Section 1141(d).

(b)  <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c)  <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on

default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be [select one] [returned

to Debtor] [distributed pro-rata among allowed claims in this class].

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| **N/A** | | | | |
| | | | | |

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Post Confirmation Management</u> Post confirmation, the Board and Officers of the Debtor shall remain: Wei Cheng – President, Mei Sui Cheng – Secretary and Tam Nguyen – Treasure

Dated: July 17, 2019

                                       /s/ Wade Cheng
                                   Rejuvi Laboratory, Inc,
                                   By: Wade Cheng
                                   CEO

                                   FINESTONE HAYES LLP

                                   /s/ Stephen D. Finestone
                                   Stephen D. Finestone
                                   Attorney for Debtor

**Attorney Certification**

I, Stephen D. Finestone, am legal counsel for the Debtor in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

> Page 1: modified the referenced exhibits to change a monthly income and expense statement to the monthly operating reports and to eliminate the reference to investment properties as Debtor does not have any.
>
> Page 2: Modified the description of the discharge due to this case being a corporate case rather than an individual case.
>
> Page 2 – Treatment of secured creditors. Modified the one description of the treatment for the secured creditor and deleted all inapplicable descriptions and tables for other types of treatment of secured claims
>
> Page 3 – modified the classes of unsecured creditors and their treatment under the circumstances of this case.
>
> Eliminated types of creditor classes or treatments of claims that did not apply to this case
>
> Modified the discharge provisions to reflect the appropriate provisions of Bankruptcy Code Section 1141.
>
> Modified to add various provisions that relate to corporate reorganizations (e.g. a class of interests, post-confirmation management and the like)
>
> Removed Exhibit 5 relating to rental income properties as it was not relevant.

I declare that the foregoing is true and correct. Executed

this 17th day of July 2019.

                                              /s/ Stephen D. Finestone
                                                   Attorney for Debtor

**Exhibit 1 - Events That Led To Bankruptcy**

Rejuvi has been in business since 1998 and has enjoyed modest but steady success in its operations. It manufactures numerous cosmetic products from its industrial condominium in South San Francisco. All of the development, manufacturing and packaging of the products takes place at Rejuvi's 8,000+- square foot facility, which was purchased as two separate condos, but which have been altered to operate as one location. Attached is a list of Rejuvi's products. These products are sold to distributors rather than to retailers or the general public. Rejuvi has approximately nine employees, most of which have been with the company for many years. Its management is in its sixties and seventies.

One of Rejuvi's products is used in tattoo removal. It allows for removal of tattoos without lasers and typically takes three to six treatments. The treatments are applied in a method similar to tattooing. Rejuvi sells the product to distributors. The product is accompanied by an extensive user guide, a copy of which is attached hereto.

Maria Corso ("Corso"), who lives in Australia, claimed that she was injured by Rejuvi's product in a salon in Australia. She did not pursue the salon, the tattoo artist or the distributor, but sued Rejuvi in court in Australia (the "Australian Litigation"). Corso claimed she properly served Rejuvi and then obtained a default against Rejuvi in the Australian Litigation. She then proceeded with the equivalent of a "prove up" hearing to establish her damages without Rejuvi being able to defend her claims. The court in the Australian Litigation awarded Corso a default judgment of approximately $1.2 million (Australian dollars – "AUS"). Corso has since added another $600,000 AUS for costs of her suit. Most of these costs consist of attorneys' fees, which are apparently allowed in personal injury cases in Australia. The total claim is approximately $1.8 million AUS. Based upon an exchange rate of .71 AUS to the U.S. dollar, the claim is approximately $1,278,000.

Corso filed a lawsuit in the U.S. District Court for the Northern District of California seeking to enforce her judgment in the Australian Litigation. (the "District Court Litigation").

Rejuvi appealed the decisions in the Australian Litigation and the appeal was pending at the time Rejuvi filed bankruptcy. Corso made clear to Rejuvi that she intended to continue her collection efforts, sell Rejuvi's real property and put it out of business. Given her aggressiveness, Rejuvi was forced to file this case to preserve its ability to operate. Moreover, Rejuvi contends that: i) the Australian court had no jurisdiction over Rejuvi; ii) that it was not property served with Corso's complaint; iii) the use of the Rejuvi tattoo remover did not cause Corso's injuries (in fact, subsequent to the Corso incident, the product was tested by the health and safety department of the Queensland Government and determined to be safe to be sold on the market; and iv) the damage award is greatly exaggerated, as many of Corso's symptoms are either unrelated to Rejuvi's product or are the result of pre-existing medical conditions.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 360 Swift Ave., #37 and 38, South San Francisco, CA 94080 (the two units were combined years ago and are not likely to be sold separately)

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $2,000,000 | HOA - $3,426 | $140,000 | $370,000 estimated | N/A | $1,486,574 |
| | 2nd | | | | |
| | 3rd | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $500,000 | 0 | 0 | $500,000 |
| Automobile #1 | N/A | | | |
| Automobile #2 | | | | |
| Household Furnishings | N/A | | | |
| Office Furnishings and computer equipment | $10,000 | 0 | 0 | $10,000 |
| Equipment | $10,000 | 0 | 0 | $10,000 |
| Inventory | $20,000 | 0 | 0 | $20,000 |
| Accounts Receivable | $35,000 | 0 | 0 | $35,000 |
| TOTAL | | | | |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $2,061,574 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | 0 |
| Chapter 7 Administrative Claims [SUBTRACT] | $20,000 |
| Chapter 11 Administrative Claims [SUBTRACT] | $80,000 |
| Priority Claims [SUBTRACT] | $1,500 |
| Chapter 7 Trustee Fees [SUBTRACT] | $80,000 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | $75,000 |

| | |
|---|---:|
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $1,805,074 |

| | |
|---|---:|
| Estimated Amount of Unsecured Claims | $1,482,010 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

**Exhibit 3 - Monthly Income and Expenses** (See attached operating report for November 2018 as an example)

| Income | Amount |
|---|---|
| Gross Employment Income | |
| Gross Business Income | |
| [OTHER INCOME - DESCRIBE] | |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | |
| **A. Total Monthly Income** | |

| | |
|---|---|
| **C. Disposable Income** (Line A - Line B) | |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | |
| Priority Claims | |
| General Unsecured Creditors | |
| [OTHER PLAN PAYMENTS - DESCRIBE] | |
| **D. Total Plan Payments** | |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | |

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | $500,000 |
| Payments on Effective Date |  |  |
| Unclassified Claims | 0 |  |
| Administrative Expense Claims | 0 |  |
| Priority Claims | 1492 |  |
| Small Claims (Class 2(a)) | 0 |  |
| U.S. Trustee Fees | 3,000 |  |
| B. Total Payments on Effective Date |  | 4,492 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) |  | $495,508 |