

Signed and Filed: December 9, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 18-31069-DM |
| Rejuvi Laboratory, Inc., | ) |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

## MEMORANDUM DECISION REGARDING JURISDICTION OF THE AUSTRALIAN COURT AND DENYING MOTION TO AMEND CLAIM

### Introduction

Creditor Maria Corso ("Creditor") filed a motion to amend her proof of claim on July 17, 2019. Debtor disputed whether a court in Australia had jurisdiction to enter a default judgment in favor of Creditor. The parties filed further oppositions and replies, and both matters came on for hearing on September 12, 2019. Following that hearing, the parties submitted additional briefing regarding the issues. For the reasons that follow, the court concludes that the Australian court did have personal jurisdiction over Creditor's cause of action, and that Creditor may not amend her proof of claim.

This court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

Case: 18-31069    Doc# 158    Filed: 12/09/19    Entered: 12/09/19 11:38:02    Page 1 of 9

**Background**

Creditor filed a proof of claim in this bankruptcy case based upon a default judgment (the "Judgment") entered in her favor in the District Court of South Australia against Debtor Rejuvi Laboratory, Inc., on June 17, 2016. The Judgment awards damages for injuries Creditor suffered after using Debtor's product.

Creditor first used the product in 2007 to remove tattoos after a local clinician recommended the product and gave Creditor a flyer regarding the tattoo removal treatment. After Creditor suffered injury from the product, she filed suit in the Australian court, which awarded her $1.2 million AUD and subsequently awarded her $51,853 in interest and $120,183 in legal expenses, resulting in a final amount of $1,192,545.01 per the amended order entered on August 19, 2016. In October of 2016, Creditor filed suit against Debtor in the Northern District of California (case no. 16-cv-05604-MMC) and then in 2017, filed a motion for summary judgment to have the Judgment recognized. Debtor opposed this recognition, and simultaneously filed an application to set aside the Judgment in the Australian court. The case was then put on hold until the Australian court denied the application in June of 2018, after which Debtor filed this bankruptcy.

The Judgment awards damages for physical harm such as burns, scars, nerve damage, and a cystic nephroma that developed in Creditor's left kidney. At the time the cystic nephroma, a tumor, had not been diagnosed as malignant, and the Australian court awarded some damages on the small chance that the tumor became malignant.[1] In January 2018, Creditor's doctor determined that the tumor had grown and recommended removal of the kidney. On January 30, 2018, the kidney was removed entirely.

Debtor filed this bankruptcy in September 2018 and Creditor filed her first proof of claim to enforce the Judgment on January 9, 2019 as Claim 7-1.

---

[1] After some discussion of whether the cystic nephroma would reach malignancy, the Judgment states, "[h]aving regard to my earlier finding some allowance must be made for treatment of the cystic nephroma. I would make a general allowance of $10,000." (Dkt. #124-2, p. 54).

**Personal Jurisdiction**

As a preliminary matter, Debtor objected to Creditor's declaration related to personal jurisdiction (dkt. #141) for hearsay and some mischaracterizations. Debtor first objects to a portion of the declaration in which Creditor makes statements regarding what was said to her by the clinician performing the tattoo removal. *See* dkt. #148. Creditor's declaration states that the clinician told Creditor she had experience using the product, had received training, and that she assured Creditor the product was safe. *See* dkt. #141-6, ¶ 5-6. The court is not convinced that these statements were offered for the truth of the matter (that the clinician had experience, that the product was safe). *See* Federal Rule of Evidence 801(c)(2). The court notes the mischaracterizations and will give the evidence the weight it is due.

Debtor moves for a determination that the Australian court lacked personal jurisdiction over Debtor and consequently, the Judgment is void. Creditor argues that Debtor established enough contact with South Australia (and Australia in general) for that court to have personal jurisdiction.

In order for the Australian court to have specific personal jurisdiction over Debtor, Debtor must have established sufficient contact with the state of South Australia. California's long-arm statute has the same due process requirements as federal law, which requires that a defendant have 'minimum contacts' with the state such that an exercise of personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.' *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. (1945). The test for minimum contacts adopted by the Ninth Circuit is:

> "1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum, or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 879 (N.D. Cal. 2012) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). For prong (1), courts in this circuit tend to apply the standard of 'purposeful direction' in tort cases, which

-3-

consists of actions taking place outside the forum that are directed at the forum. *Schwarzenegger*, 374 F.3d at 802. This can include the distribution of goods originating elsewhere. *Id*. at 803.

Schwarzenggar put forth a three-part test to evaluate purposeful direction, taken from *Calder v. Jones*, 465 U.S. 783, 804 (1984): (1) the defendant committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803.

The facts demonstrate that Debtor directed its product to South Australia. Debtor states that it develops and produces a variety of products with Dr. Cheng as the President. (Cheng Declaration, dkt. #136). It employs 6-9 people with gross sales of $1.2-1.4 million out of a facility in South San Francisco, where all products are manufactured, packaged, and shipped. *Id*. Debtor makes limited online sales directly to consumers and some spas/salons in America but: "Generally speaking, however, [Debtor] does not sell to the general public, and the only direct sales are in the United States. [Debtor] sells its products internationally, primarily through a network of distributors." (Debtor's Brief, p. 5). Debtor typically enters into agreements whereby it grants a distributor exclusive rights in their respective region, then fills orders and locally transports the products. After that, the distributors have control. Debtor entered into one such agreement with an Australian distributor located in Queensland now named Arias Holdings Pty. Ltd. ("Arias") and gave it exclusive rights in Australia to distribute products. Arias began importing Debtor's products in 2006 and handled everything after the product left South San Francisco. Title to the products passed from Debtor to Arias when the products left Debtor's control. Total sales were about $22-23,000 a year. Exhibit D (dkt. #136) of Dr. Cheng's declaration also indicates that the Australian Institute of Permanent Makeup was the exclusive trainer and appointed agent/distributor of the tattoo removal products and training, which contract was made with "Rejuvi Australia" (which was apparently how Arias represented itself). Dr. Cheng also went to Australia twice to provide seminars about the products, to Brisbane, Sydney (twice), and Melbourne. The clinician who treated Creditor with the tattoo removal product told Creditor she had been to one of the seminars. She assured Creditor that

the product was safe, and gave her a flyer about Debtor, which has Debtor's South San Francisco address on it (dkt. #141, Ex. 2).

In its own words, the majority of Debtor's business involves creating products and then using third-party distributors in other countries. Its very business model directs activities to international forums, and this particular arrangement with Arias directed those activities to all of Australia. The fact that it used a distributor does not help Debtor. *See College Source, Inc. v. Academy One, Inc.*, 653 F.3d 1066, 1068 (9th Cir. 2011) ("we attribute no jurisdictional significance to the fact that employees of AcademyOne's contractor performed the relevant work on AcademyOne's behalf.").

Prongs 1 and 2 of the purposeful direction test are satisfied by these facts. The intentional act is Debtor's contracting with a distributor in Australia and creating products for distribution in Australia. For prong 2, the intentional act must have been expressly aimed at Australia, and this analysis depends largely on the specific type of tort at issue. *See Schwarzenegger*, 374 F.2d at 807. Debtor intentionally targeted Australia by contracting with Arias, and furthered that intention by teaching seminars on the products in Australia to promote use of their products and teach practitioners how to administer the products. Debtor's name is listed on flyers distributed to prospective clients. Stepping back, the big picture is that Debtor used distributors but was ultimately marketing its own product and attempting to successfully pierce foreign markets with its products. Unlike the products liability cases cited by Debtor, here Debtor did not merely know that its products would reach Australia, instead, it intended this result and contracted with Arias for that very purpose.

Prong 3 of the purposeful direction test is also easily satisfied here, because the harm caused—complications from using the product—are foreseeable where the tattoo removal product was distributed, promoted, and used.

As for the remaining factors for the broader minimum contacts test, these are also easily satisfied. It is clear that Creditor's injury and subsequent claim would result from Debtor's contract with Arias, which enabled Arias to distribute this product in all regions of Australia. In addition, it is further reasonable to allow this litigation because Debtor, and Debtor alone, created the product which harmed Creditor. This product is wholly, not just in part, responsible

-5-

for her injuries. To find otherwise would conflict with fair play as it would allow a company like Debtor—who mostly contracts with international distributors and does not sell to the general public—to transfer liability to third parties ad infinitum. By Debtor's logic, it will never be liable for its products malfunctioning outside of California, despite mostly doing business outside of California. Contracting with a third party to distribute the product does not eliminate Debtor's responsibility for the product itself.

Debtor repeatedly differentiates between South Australia and Australia and iterates that there is no evidence of contact with South Australia. Debtor's logic invites the result that it may have established enough contact with Australia as a whole, but not its parts. This is not a reasonable result. Debtor contracted with Arias to distribute its products in all of Australia, irrespective of region. This, combined with subsequent contact, establishes that Debtor expressly aimed its product to each region in Australia.

Consequently, the court in Australia did have personal jurisdiction over Debtor and the Judgment stands.

**Amending the Proof of Claim**

Creditor also seeks to amend her proof of claim to include additional damages for loss of her kidney in 2018. Debtor argues that she may not now include additional damages.

Debtor argues that amendment is precluded due to res judicata[2] because the Judgment has already been entered as to damages flowing from Debtor's conduct, and thus any amendment would be futile. Res judicata requires an identity of claims, a final judgment on the merits, and privity. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). There is no dispute as to privity of the parties or whether the Judgment is final, so the court will focus on the first factor.

Creditor seeks to add damages for loss of a kidney due to a tumor generated by Debtor's product. On June 16, 2016, the District Court of South Australia issued the Judgment awarding Creditor damages flowing from use of Debtor's tattoo removal product. The Judgment

---

[2] The court notes that this use of res judicata is referred to in modern times as claim preclusion. *See Paine v. Griffin et al. (In re Paine)*, 283 B.R. 33, 38 (9th Cir. BAP 2002). As the parties refer to res judicata, the court will match their language.

Case: 18-31069   Doc# 158   Filed: 12/09/19   Entered: 12/09/19 11:38:02   Page 6 of 9

acknowledges that Creditor had been diagnosed with a cystic nephroma at that time, and while it was a benign tumor, the court noted that there was a 5-10% chance of malignancy and that Creditor would require ongoing monitoring of her kidney.  When assessing damages, the court found that Debtor's product was the cause of the cystic nephroma and then, in a subsection titled "Future medical expenses," awarded a general allowance of $10,000 AUD for its treatment.  Now, Creditor seeks to recover for the malignancy, and consequent removal, of her kidney.  An identity of claims requires that two suits arise from the same 'transactional nucleus of facts.'  *Id.* at 1078.  Here, the transactional nucleus of facts is that Creditor used Debtor's product and was damaged by it.  Creditor argues that the claims are not identical because a latent injury that is later manifested is a claim distinct from any prior claims from the same injury.  For this proposition, Creditor cites to case law that deals almost exclusively with whether late-discovered tort injuries violated the relevant statute of limitations.  *See e.g. Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788 (2011) (where the California Supreme Court held that an earlier discovered tobacco-related disease did not trigger the statute of limitations for a lawsuit based on a latent disease arising from the same tobacco use).[3]  The simple distinction here is that a judgment has been rendered in favor of Creditor for the injury.  The Judgment plainly includes damages for the (then) remote possibility of the tumor becoming malignant: it awards $10,000 in the event that the 5-10% chance of malignancy was realized.  The court is sympathetic to Creditor's plight but cannot undo the Judgment as this claim has been provided for.

Further, if Creditor were correct in asserting that the claim for a lost kidney is not identical and that it gives rise to a distinct claim, then Creditor is now arguing for inclusion of a

---

[3] Creditor cites to one case that dealt with res judicata, a case from Wisconsin in which a plaintiff's prior suit had been dismissed with prejudice.  *Sopha v. Owens–Corning Fiberglas*, 230 Wis. 2d 212, 216-17 (1999).  This case is not particularly helpful here, where there is a judgment in favor of Creditor, but the court notes that the Wisconsin court stated "[o]rdinarily, a subsequent injury resulting from a tortfeasor's conduct does not give rise to a new cause of action for the purposes of claim preclusion. The Restatement (Second) of Judgments explains: "It is immaterial that in trying the first action he [the claimant] was not in possession of enough information about the damages, past or prospective, or that the damages turned out to be unexpectedly large and in excess of the judgment."  *Id.* at 234–35.

late-filed claim rather than a claim amendment. This is subject to the standard articulated by the Ninth Circuit in *California Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925 (9th Cir. 1993). There, the court iterated that a claim in bankruptcy arises when it is fairly contemplated. *Id*. at 930. Here, Creditor knew of the damage to her kidney by at least January of 2018, when her doctor recommended removal (dkt. #124-1, ¶ 15-23). As Creditor had sufficient knowledge of the claim for almost a year prior to filing her proof of claim, the claim was fairly contemplated at that time and thus cannot be included now as a late claim.

As a result, the court concludes that amendment would be futile due to principles of res judicata, thus Creditor may not amend her proof of claim.

The court will issue a concurrent order consistent with this memorandum decision. A status conference is set for January 23, 2020 at 11:30 a.m. to discuss next steps in this case.

**\*\*\* END OF MEMORANDUM \*\*\***

**COURT SERVICE LIST**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California